IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC AND WENDY GRAHAM,<br>Plaintiffs | : <br> : <br> : | CIVIL ACTION NO. |
| v. | : <br> : | FILED ELECTRONICALLY |
| HIGHLANDS NEIGHBORHOOD<br>ASSOCIATION, INC.<br>Defendant | : <br> : <br> : <br> : | |

# COMPLAINT
## PARTIES

1. Plaintiffs Eric and Wendy Graham (hereinafter alternately referred to as "Plaintiffs" or "the Grahams") are a married couple with an address of 5 Lark Drive, York, Pennsylvania 17370.

2. Defendant Highlands Neighborhood Association, Inc. (hereinafter alternately referred to as "Defendant" or "the Association") is a Pennsylvania not-for-profit corporation with a principal place of business located at 1190 Diller Road, Lancaster, Pennsylvania 17601.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331 because the controversy arises under the Federal Fair Housing Act ("FHA"), a federal law.

4.     Venue is appropriate because the Defendant's principal place of business is located within this judicial district.

## RELEVANT FACTS

5.     The Highlands Planned Community is a subdivision located in a rural area of Newberry Township, York County, Pennsylvania.

6.     The subdivision was developed by Charter Homes at York, Inc., who turned control of the subdivision over to Defendant in or about December 2019.

7.     The Association has delegated most day-to-day management activities to Esquire Management, a property management company located in Lancaster, Pennsylvania.

8.     In June of 2017, Eric and Wendy Graham purchased the house at 5 Lark Drive, from an affiliate of Charter Homes at York, Inc. The house had previously been used as the model home for the subdivision.

9.     The lot purchased by the Grahams, which is Lot 31 of the subdivision plan ("Lot 31") sits on the far northwest corner of the subdivision. The rear of Lot 31 backs up to a wooded area and there is only one other home directly beside it. A copy of the subdivision plan showing the location of Lot 31 is attached hereto as Exhibit "A."

10.    The seller of Lot 31 did not disclose on the Agreement of Sale that the property was a part of a planned community.

11.   The Grahams' real estate agent inquired of the seller whether the home was part of the Highlands, A Planned Community, and the seller's real estate agent confirmed that Lot 31 was excluded from the Highlands Planned Community and not subject to the control of Defendant.

12.   The Grahams' title insurance agent was also of the belief that Lot 31 was not part of the Highlands Planned Community.

13.   From the time the Grahams purchased Lot 31 until March 2020, the Grahams had never received any correspondence or invoices from Defendant or its predecessor-in-interest.

14.   The Grahams have an autistic son, Jackson, whose disability impairs his ability to cope with stress, anxiety, and social interactions.  See Exhibit B.

15.   The Grahams purchased four female chickens (the "Hens") in or about November of 2019.  A letter from a treating medical doctor attesting to Jackson's need for an emotional support animal is attached hereto as Exhibit "B."

16.   The Grahams then purchased a small, moveable chicken coop in which to house the Hens.

17.   The coop is always placed in the Grahams' fenced-in backyard, and the Hens never leave the backyard.

18.   The Hens, which were hand-raised since they were two days old, act as domestic animals.

19.     The Hens are kept in the coop at night or when the Grahams are not at home.

20.     On or about March 19, 2020, the Grahams received a letter from the Association informing them that their keeping of the Hens violated the Association's rules against owning animals other than domestic pets. The letter was addressed to the Grahams predecessor-in-interest, but the Grahams inadvertently opened it.

21.     The letter ordered the Grahams to remove the Hens immediately.

22.     The Grahams retained legal counsel to (i) confirm that Lot 31 was subject to the rules, regulations, and policies of the Highlands Neighborhood Association, as they were previously told it was not; and (ii) assert the Grahams' rights under the FHA.

23.     The Grahams submitted their request for a reasonable accommodation to Ryan Neumyer, an attorney who works for Esquire Management, via an emailed letter on May 12, 2020. A copy of the letter is attached hereto as Exhibit "C."

24.     The letter was accompanied by a letter from the Grahams' only next door neighbor, Katie Perry, who attested that she enjoys the Hens and is not disturbed by their presence.

25.     The Association responded through Ryan Neumyer on June 2, 2020 denying Plaintiffs' request for a reasonable accommodation under the FHA. A

copy of the emailed response from Ryan Neumyer is attached hereto as Exhibit "D."

## COUNT I – VIOLATION OF THE FEDERAL FAIR HOUSING ACT

### 42 U.S.C.A § 3601 *et seq.*

26.     The FHA prohibits housing providers from discriminating against persons with disabilities.  42 U.S.C.A. § 3604 (f)(1).

27.     Homeowner's associations are considered "housing providers" under the FFHA.

28.     The FHA includes in its definition of discrimination "a refusal to make reasonable accommodations in rules, policies, practices, or services [. . .]." 42 U.S.C.A. § 3604 (f)(3)(B).

29.     If a disabled person requests a reasonable accommodation, the housing provider must grant it unless the housing provider can show that doing so would (i) cause an undue financial or administrative burden; or (ii) fundamentally alter the nature of the housing provider's operations.

30.     The FHA states that housing providers who violate the act are subject to a civil penalty of $21,039 for first time violations. 42 U.S.C.A. §  3612 (g)(3).

31.     The United States Department of Housing and Urban Development ("HUD"), the agency delegated with overseeing implementation of the FHA,

includes in its definition of "assistance animal" animals used for emotional support of the disabled person.

32. HUD regulations do not limit emotional support animals to just dogs or cats.

33. The Grahams' son, Jackson, lives with the Grahams at 5 Lark Drive and has Autism, a disability that qualifies for protection under the FHA.

34. The Grahams keep the Hens on their property for the benefit of Jackson, who relies on the Hens as emotional support animals. See Exhibit B.

35. The Grahams requested that the Association grant them a reasonable accommodation designed to ease some of Jackson's symptoms by waiving the Association rule against the keeping of animals other than domestic animals. See Exhibit C.

36. The Association flatly refused this request, without even discussing with the Grahams other possible alternatives. See Exhibit D.

37. Further, the Association has failed to show why the reasonable accommodation cannot be granted, by way of producing evidence that allowing the Hens would cause undue financial burden on the Association or fundamentally alter the Association's operations.

WHEREFORE, Plaintiffs Eric and Wendy Graham respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant in the amount of $21,039 plus attorneys' fees, and further order Defendant to permit Plaintiffs to keep the Hens as a reasonable accommodation under the Federal Fair Housing Act.

> Respectfully submitted,
>
> **METTE, EVANS & WOODSIDE**
>
> By: <u>/s/Kara M. Eshenaur, Esquire</u>
>     Kara M. Eshenaur, Esquire
>     PA Attorney I.D. No. 327404
>     James L. Goldsmith, Esquire
>     PA Attorney I.D. No. 27115
>     3401 N Front Street
>     Harrisburg, PA 17110
>     (717) 232-5000 (Phone)
>     (717) 236-1816 (Fax)
>     *Attorneys for Plaintiffs,*
>     *Eric and Wendy Graham*

1537902v1